We're doing kind of a split sitting this morning. We'll begin with Site Update, hear that case, and then take a brief recess and continue with the remaining two cases this morning. So the first case this morning is 13-1458 Site Update Solutions v. Accor North America. Is Mr. Edmonds here? Okay, Mr. Tchaikovsky, whenever you're ready. May it please the Court. Your Honor, before us we have a case that presents two abuses that we believe need to be addressed in this case and in future cases. One, that somehow dismissals with prejudice or ever-changing claim construction positions, or for that matter, supersax, somehow cure prior frivolous claim construction positions and remove the exceptional case finding from existing. Two, we have that frivolous positions are somehow excusable because they're inconsistent with established precedent. And that's what the Court down below relied upon. What happened here? Newegg, the defendant here, suffered gross injustice by being forced to defend a frivolous case for two and a half years. So far you've mentioned gross injustice, you've mentioned frivolous. What are we to make of the fact that the elephant in the room is that we've got two Supreme Court cases, and I'm sure you're familiar with them, and the argument that we're awaiting judgment on that implicate the standard of review as well as the standards. What are we to make of that? I think today we need to be proceeding as we have briefed it under the current standard, the objective baselessness, subjective baseless standard. Obviously, Your Honors, you can decide the issues. But wouldn't that make – what about the standard of review? I mean, currently, law, if the Supreme Court were to say that it's an abuse of discretion, that would affect how we would look at this case, right? It would, Your Honors. I would suggest a likely outcome is the Supreme Court's opinions are due in June. We will have results in June. And much of what is discussed today can be decided. And even if, for example, Hallmark were to come to an abuse of discretion as a result, I think as we go through the argument, you will see that you will find there has been an abuse of discretion with respect to the decision here from the district court. With respect to the judge's decision regarding the claims that are indefinite, if you've got a patentee and they've gotten a patent and then they go to court and they lose it because they lose the case because the claim is indefinite, you can't really stop them. I mean, even though you think it's not a close call and the claim should have gone down because they're indefinite, they've got a patent and a presumption of validity. That can't really in and of itself be considered objectively baseless, right, to pursue enforcement of a patent when you've gotten out of the patent, right? So I do think it can be effectively baseless with respect to indefiniteness. You know, side update conceded here that they dropped the case because it was indefinite. If you actually look at side update's brief on page 10, they actually say they had concern that the four terms were indefinite. Rather than prolong litigation and deference of the district court's determination, they dropped the case. There are other cases that this court has faced where patents are found in doubt. Just because a patent is issued or even reissued doesn't mean that the case cannot be exceptional. We don't have any cases, do we, where the patent that we found an exceptional case or that the district court has found an exceptional case is based on invalidity? Well, maybe it's a little different there because if you go for a full-blown extreme construction and based on that construction you get the patent being invalid, then I guess you ought to be tagged for that. I think it all does come, because the indefiniteness is tied, as we saw in HCC versus IPCOM, you waive indefiniteness if not raised as a defense at the Markman process. I think it's all tied to the Klang construction positions and here we have in the 112.6 context Klang construction positions that are brought up that can lead to indefiniteness when there's a failure to include an algorithm. In that sense, yes, this is part of the Klang construction process. When someone's taken so unreasonable positions as put forth in Raylon, both by your honors, whether in the majority opinion or the concurring opinion, that are so unreasonable and so ever-changing that I think there's no doubt. In this situation, you're arguing that Site Update should have known that its patents were invalid, but yet the patent is an issued patent and under our law we presume that an issued patent is valid. How does that square with, aren't you arguing up against too strong of a precedent, too strong of a general rule of law? The issue is not just the invalidity of the claim. The issue is Site Update chose to assert one patent, one claim, Claim 8, all means-plus-function elements, eight means-plus-function elements. There's a duty to presume to know the law under Rule 11 when you file that complaint, when you file your infringement contentions in Eastern New Jersey, Texas, when you file your opening brief, which the judge down below in the Northern District found those positions to be frivolous. There's a duty to presume to know it. They're presumed to know the law. And then Site Update asserted these frivolous positions, which the trial court agreed were frivolous in East Texas in their opening briefing with respect to means-plus-function. And then in the Northern District of California, the judge says they're not entirely frivolous. To me, what is that? Partially frivolous? Maybe it's wrong. Maybe their determination was wrong as opposed to frivolous. And we have cases every day where people lose their cases not because they were taking a frivolous position. It's the court just decided the position was wrong. I would suggest that in a case where the positions were frivolous in East Texas, and there's no doubt they're frivolous, where we have most of them just having a script, which is nothing but a program. And then we then look and we have not entirely frivolous with Site Update then suggesting that the positions were not materially different. You referenced East Texas. And I'm going to say this. When I read your brief, you mentioned trolls a number of times. And you get into a lot of labels and name calling. And it almost reached to the point to me to be a brief based on hyperbole and labels characterization. I don't see the word troll in our statutes. I don't see it in the panel law. And I just want you to know that it's very distractive to ferret out even your own arguments as to the accurateness of your position because it's so interwoven with this emotional driven statements. So I just caution, I'm letting you know that now so that you don't engage in that here. At least I don't want to hear it. And something to consider in the future as far as your briefs are concerned. Understood, Your Honor. And maybe I should ask your friend on the other side this as well. As I read the district court, is it your view that his ultimate saying what side of the line this case comes out on was driven by his view that the law was somehow unclear? Is that the way you read it? That there was a lack of clarity in the law, right? The district court, at least with respect to the means plus function element, believe that there was either a misunderstanding, nuance, or a complicated framework created by this court, yes. And as the basis for that, he cited – I recall he cited… Dissent in ergo. Is your argument that that's just not enough? I mean, unfortunately, life is not clear and nowhere – no one can say that any area of the law is 1,000% settled. But just because there are a few – a dissent here and whatever, that that's not sufficient to establish that there are nuances or a lack of clarity that can justify what you think is a baseless assertion. That is definitely our position is the law is ever-changing in all areas. We can argue complexity and changing in all – claim construction and markment continues to change. Indefiniteness continues to change. That doesn't mean that, again, when a plaintiff brings a claim with all means plus function elements, you have a duty to know the law. They cited the law. In fact, the lower court lawyers, district court lawyers, actually have been to this court – before this court on those issues of law relating to means plus function on software claims. And the ever-changing positions on those means plus function claims are evidence, especially from Texas to California. Where's the line, though? I mean, I understand the means plus function test requires you to point to something more specific in the specification, but they did. I mean, their arguments seem – that's weak, but they pointed to the web server, the CGI program, and the like to say this is the part of the specification that fulfills the means plus function test. If they're making an argument that doesn't seem to be in bad faith, does that get them over the objectively baseless standard? Well, if it's your view that under our case law, it was relatively clear that the structure that they pointed to in the specification was inadequate under what we've said is requisite structure in these cases? Yes, Your Honor, it is. Both with respect to means plus function generally, and then obviously we had the second argument with respect to the table of search engines, table of files, which even side updates counsel mentioned was the preferred embodiment during the course of the argument before the district court. And the district court acknowledged I would get in trouble if I didn't include it, and yet somehow they did move from Texas to Northern District of California to include the generic website database, which was already in the claim, in Claim 8, but yet they would not include the specific structure that this court requires and requires to be linked. And this is over two years of discussion with side updates counsel through now two meet and confer processes under two local rules, Eastern District of Texas, Northern District of California. Well, let me ask you about that because one might say, well, this doesn't look like an exceptional case to me because it kind of went off early. So even if there were really serious questions, these were not really bad guys because this case settled. They offered settlement. They folded their tent pretty early on in the process, therefore not costing the defendant a great deal, relatively speaking, in cases that go through trial and so forth. And should that be something that we take into account when we evaluate the exceptional case? I do think this court can take that into account. And again, depending on the standards, it will depend on to what level. However, when a trial court finds certain positions in the Eastern District of Texas that were frivolous and highly problematic, those are the words on A25. Two, when it finds entirely frivolous, not entirely frivolous, excuse me, which to me is partially frivolous, on A23 of the order. And then they admit on their brief in page 33 they're not materially different. That then a dismissal after a markman two and a half years later of litigation and going through a transfer from East Texas to Northern California does not somehow then mitigate. That's one of the abuses that can be created here is that someone can file a complaint, take bad faith positions, frivolous positions, somehow try to argue, I've either cured them because I've added a little bit of structure, and then dismiss after they get to the markman, which as this court has recognized, that's where we need to get an eon net to expose the frivolity of the positions. Let me ask you this question. Is it your argument that the site updates claims are directed to a general purpose computer? That's the structure that it's directed to? They did not. They did not provide the special purpose computer with respect to many of the means plus function claims, yes. Why don't you enter your rebuttal time while we store another couple minutes to give you three minutes of rebuttal. And we'll add two minutes to Mr. Edmond's time if he needs it, just to keep the time straight. Thank you. Mr. Edmond, are your claims directed to a general purpose computer? Well, let me just put it this way. The district court seemed to hold that. I think that the position… What's your position? Well, my position is that the plaintiff's belief that it was a general purpose computer for which no additional algorithm was necessary was a reasonable position to take. Based on what? I mean, the district court cited a dissent by Judge Newman and maybe a district court case, I'm not sure. Is that the legal basis for you to think that there was some basis for you to assert that this was sufficient structure under a case law? Well, I think the basis to – first of all, there was a factual dispute between experts. I think it's abnormal these days that experts submit declarations in Markman proceedings. And in part, the district court relied upon the expert declaration of Newegg. So there was a factual dispute that underlied the legal proceeding here, which – a factual dispute. I think there was no challenges to the qualifications of the expert, no challenges to the analysis of the expert. There was simply a disagreement between experts. I think it's reasonable for a litigant to rely upon the reasoned analysis of their expert. In addition… Did the district court call that out as one of the basis for him not finding the case exceptional? The district court mentioned that he relied upon the expert of the defendants. But no. I mean, in terms of what – I think what he said was – when he said it's a complicated area of law, I think it's a complicated area of law because… Well, one could say that about, unfortunately, pretty much anything in patent law, right? Fair enough. But it's a complex legal framework, and also underlying that can be factual disputes as well. It's complex, but I think our precedent is pretty clear that if you're a means plus function test and you're looking at the computer environment, a general computer isn't enough. I mean, I know you said that it is, but I don't see how that's a reasonable reading of our precedent. I think that it says if you're looking to a general computer, you have to specify an algorithm too. I believe that the position that SiteUpdate took – and like I say, the district court has ruled. We haven't appealed the ruling. I'm not saying the district court is wrong. I'm saying that SiteUpdate's position was reasonable. Can you just clarify what your position was because I'm a little confused as to whether you think your claim was to a general purpose computer and you don't need an algorithm? Or that your claim was actually to a special purpose computer and that the CGI program coupled with the web server stuff satisfied that specialized computer and algorithm test? The latter is exactly it, that our position in Markman and the trial court and the position that I submitted was reasonable was that it is a special purpose computer. There is sufficient structure. There is case law support for that. We've cited the Goss case, which talks about special purpose computers. And that was your expressed argument below? I believe it was. I mean, it may be that the briefing was less than your equality briefing. Yeah, I believe it was. The code says that you misapplied the law, that you didn't understand it, and that was the basis for part of asserting a frivolous claim. And so we're trying to find out from you whether your argument – whether you were arguing that the claims are directed to a general purpose computer or not. I mean, that makes a big difference to the outcome of the case, and it seems to me like you're having a hard time articulating the position. I'm sorry I am. I'll try to clarify that. No, I think – it seems to me that, as they pointed out, the legal framework was briefed. The position was that this was a special purpose computer, that the combination of the web server, the CGI script, the forms, etc. was a special purpose computer for which no additional algorithm was necessary to be disclosed. What case law did you rely on for that proposition? The cases that were cited were Goss. There's a case called Pavilion that was cited. Those are our cases? Goss is a district court case. Pavilion is a district court case. Pavilion relies upon a Federal Circuit case called Med Instrumentation Diagnostics v. Electa, which is 344F3-1205. In addition, there's another case from this court, Texec v. IBM, which is 731F13-36. It talks about if there's software that's disclosed in the specification, then you don't need to show an algorithm. In fact, this court has said that with the software disclosed, there's no need – it's gone past disclosing an algorithm. There was no need to disclose a specific algorithm. Doesn't the software have to perform the function of disclosing the claim, though? And we believe it did, and there was an expert who stated that it did. There was substantial support that it did. I mean, that's what – that's why I'm saying the parties – So you're saying that if it's a CGI program, it can perform the functions of updating and things like that, that that's the structure that fulfills the function of your claim? The web – it's a combination of the web server, the CGI program, and the form. In fact, there's support in the specification. The web server is just a computer, right? Sorry? The web server is just a computer. A web server is a computer. A web server is a computer that does specific things. Well, it is and it isn't. I mean, my computer at home can be a web server if I want it to be. It has to have a special program. And so really, are you just relying on the CGI program? And is there enough in that to compile tables or do whatever your claim is supposed to do? Or is CGI just some kind of software program that permits people to host websites? There was a dispute over CGI, and I think the dispute was primarily the specification states what the CGI program does. The expert that the defendants submitted with their Markman briefing contradicted that and said a CGI program is more generic. It doesn't do the things the specification says. That's what the district court partially credited in making his ruling. And your expert said the complete opposite or otherwise? I think it's fair to say the expert said more or less the opposite of each other. But I would also say that our position has support in the specification, which I think it's reasonable to say should trump in that circumstance in terms of the experts disagree over whether the CGI program does this. But if the specification says it doesn't, then I think it's at least reasonable to rely upon that. Unless and until the Supreme Court says otherwise, what standard of review? I think the factual findings are reviewed for clear error. I believe it is, as far as the subjective test, it's an abuse of discretion or clear error. We certainly have it down in our brief. But I mean it's a deferential standard, and there should be deference given to the trial court. He went through all this briefing. He saw it firsthand. I thought at least some – there was a consensus that they thought at least our decision in Hallmark. I mean that's what the Supreme Court has been talking about all month, whether or not the de novo standard is appropriate, suggesting that it is, at least with regard to objectively baseless, the de novo standard applies. With regard to the objective, yes. But the factual findings that underlie that I believe are still – should be entirely deferent. Okay, because you say in your – well, you have the additional briefing, and you have a statement right up front that says, Newegg again provides no factual proof that the district court abused its discretion in holding that Newegg failed to prove by clear and convincing evidence that this was an exceptional case justifying an exceptional case on its findings. That suggests that you think that the standard is an abuse of discretion. There we're referring to the subjective test. Okay. What do you – I asked your friend what do you think we should make of the pending case before the Supreme Court currently in Octane and Hallmark. I mean I agree that you should decide under the current standard. I think under the current standard, site updates should prevail. As far as I see in terms of the change in the law, I don't see that really affecting a change here. I mean I – honestly, I don't think this is a close case. And I want to point out, while I still have time, that in terms of this indefiniteness, if you go back and you look at the defendants, Newegg's brief that they filed in the Eastern District of Texas, they didn't assert indefiniteness on the basis of a lack of algorithm. So it just seems remarkable to me that they say, well, site updates should have known from the institution of the case in the Eastern District of Texas that these claims were indefinite when their own proposed claims instructions didn't assert that indefiniteness. They changed their position once it got to the Northern District of California. I'd also say that in terms of them saying, well, site update revised its claim constructions between the two courtrooms, and somehow that shows bad faith. If anything, it shows good faith, and I'd point out that in the first proceeding, site update had no opportunity to file a reply. The case was transferred before the reply was made. So site update's opening brief in Northern California essentially was its reply, and it revised its positions to address the criticisms of Newegg. The court also asked, should it take into account that site update folded its tent? If you will, yes. I mean, there are opinions from courts saying if the plaintiff doesn't fold their tent after receiving an adverse ruling, then that should be taken into consideration. The counter should certainly be taken into consideration. I think at every instance, other than being wrong on the claim construction, at every instance, site update… Why – I mean, how much should we weigh that factor? It seems to me that if we put too much weight on that, all that's going to happen is people are going to – potentially people – I'm not accusing you of this. People with weak patents can come in, file complaints, and hope to get quick settlements, and if they don't, then they fold their hand, and they're not liable for attorney's fees. I mean, if we take how quick somebody folds into – that's going to encourage that practice, which I think you would agree is bad. So why should we really weigh the timing of when you decided to give up? Well, I think it's a factor. I think if they're proceeding in bad faith, then why would they fold their tent? Why wouldn't they keep going? If it was truly a shakedown, as Newegg has alleged, why wouldn't they continue the shakedown? Because once everybody realizes they're going to lose, then you've got attorney's fees that you're going to be expending, and what is that – I mean that's a strategic decision. But as Judge Hughes said, I mean often I guess the most egregious examples one hears are people who really might have objectively baseless claims. But of course they'd fold. I mean it's not in their interest to just spend $10 million on their own side to litigate these to the end and lose. The interest is to derive some benefit and fold your tent. I understand. The touchstone of the issue is certainly whether the claim construction positions were objectively baseless. We submit that they were not, that there was a dispute between the parties as to whether there was enough structure that accompanied the server and CGI informed that no additional algorithm was necessary. And that dispute was – it was resolved against site update, but its position was still reasonable. That is the ultimate fact of the case. But beyond that, site update, when its claim construction position was criticized, it revised them to bring in more structure. When it received an adverse ruling, it dropped the case. I think those illustrate its reasonableness. Now, you sort of suggested that we could adhere to current law and resolve this case. What – I guess I want to get some clarification on what you think current law is. The district court – so tell me if you disagree. The district court, as I read it, seemed to apply objectively baseless, sort of used that term interchangeably with frivolous. Is it your view that that's what the current law is, that objectively baseless is the standard and that is equivalent to frivolous? I think frivolous is one way of saying objectively baseless. I don't think it's the only way of saying it. Is, in your view, current law also include a totality of circumstance kind of factor? I believe it does. And I believe that the district court considered the totality of circumstance. Now, your opponent is going to say if you think that frivolous equates with objectively baseless, the district court, in its opinion, says that claims were almost frivolous or something like that, not entirely or partially frivolous or somewhere like that. So I think the court may have thought they were at least in part, a little bit, didn't say entirely. I think it said almost entirely. Anyway, you understand my point. I think you may be conceding and stepping on a slippery slope here. Well, let me say, I think when you read the court's opinion as a whole, that he said that Site Update was not frivolous and its positions were not objectively baseless. He said it was – Judge Rehn is correct. He said its position was not entirely frivolous. You know, it's a vague statement in terms of what is entirely – what is he referring to. But all I can say is that he went through all of these factors. He found it was not objectively baseless. Your opponent would say that part of it was frivolous. I mean, maybe a percentage. The district court didn't clarify exactly what he was referring to there. I mean, if anything, I think that that is a loose comment. You say another way of looking at objectively baseless is frivolous, whether something is frivolous. Aren't you conceding your case? Well, I don't believe so. I mean, I think that the court said it wasn't frivolous. I mean, if the court – if the district court equated frivolousness with objective baselessness, as you posited, his clear holding was it was not objectively baseless. So, no, I don't think so. I don't think that that concedes anything. To the extent that if – I'm not a legal scholar. If my statement is somehow construed that way, I would just say that the district court applied the standards of this court, has an objective baselessness, and its opinion should be upheld because the facts simply support its opinion. Now, with the district court following the comment that you were just discussing with Judge Reyna, he says that your argument overlooks a nuance in federal circuit case law. And he characterizes that nuance as being namely that the functions the court has identified in its computer-related means-plus-function opinion do not on their own transform general-purpose computers into special-purpose computers. And then he goes on to say, given the dispute, and the dispute he cites is a dissent by Judge Newman, is it your view that there's a real lack of clarity, at least in our recent precedent, about what's required in this general-purpose computer is not sufficient? No, I think that they – I think where reasonable minds differ primarily is whether something is a special-purpose computer and whether sufficient structure and specification, for example, from software that's disclosed like the CGI script, where you don't have to have an algorithm that – you don't have to have an algorithm as part of the construction. And I think that's an area where there can be factual disputes, and that's an area where there is lack of clarity in the law as to exactly where that line is drawn. I think that there's also somewhat of a lack of clarity in terms of where the line is drawn as far as a general computer, as far as its generic functions, but that doesn't really seem to be what the main issue was. You cited a case for us earlier. I apologize. I've tried to write it down. I don't have time. One of our cases that you thought reported, did you tech something or other? It's TechSec versus IBM, and it's 731F1336. Is that – I don't think it's cited in your brief. This case was decided, I think, within days of our brief. The case actually came out in October 2nd, 2013, so we weren't aware of it at that time. But this court said the defendants contend that the examples only disclose generic software and not a specific algorithm, but the examples here provide detailed prose that shows how the specific software products operate to implement the claim function, very similar to what we have in the present case. And the court said, short of providing source code, it's difficult to envision a more detailed disclosure. And in doing so, it reversed the district court's conclusion that the specification lacked sufficient structure because an algorithm wasn't present. Thank you. Thank you, Your Honor. Thank you, Your Honor. Are you familiar with the case your friend just cited? I have not read the case in its entirety. I do think it's similar to probably Tycoon Touch in terms of, yes, you could have prose. You don't need an algorithm or source code. I don't think that changes the result that we have here. I want to touch upon the website database because perhaps it's something that wasn't briefed as clearly, as Judge Rano noted perhaps, but also comment on the experts' disclosure. Their expert only commented, as Judge Hughes noted, that there was a special purpose computer. There was no linkage then to the function or whether that computer actually performed the function of the claim. So in A1589, Dr. Levien's declaration doesn't provide any connection of this computer. It just says it's a special purpose computer. I'm not sure what that does for anyone. In addition, in paragraph 12, it was based on the law that was provided to him by Mr. Goldstein and Ms. Lipsky, counsel down below, who was confused about the law. So I don't understand how an expert's declaration was based on law that the district court recognized they were confused on at least this complex case. Whenever there's any factual finding or do you just have to know whether the CGI program could actually perform this kind of website updating? A CGI program is like saying program. It performs nothing in and of itself. With respect to website updating. It's an operating program? Is that what you're saying? Excuse me? It's an operating program? It performs no special functions whatsoever? That's correct. You'd have to have the code to know what it would perform, which we don't have. Same with a script. We don't know what it does until someone actually gives me the code to tell me what the script performs. It does nothing in and of itself. Is CGI just a generic name for a class of programs? It's a common gateway interface, so it's used to just connect on the Internet. But it does not tell you what the program does or what the script does. On a website database, the court erred. This is a court error because the court thought that SiteUpdate had agreed at the hearing that content of the website was something that they had given up at the Markman hearing. Not so. That never happened. If you read the transcript on A1786-87, you see SiteUpdate agrees there must be something more than the website. But they actually refused to agree with the court that it's more than the content of the website itself. In fact, in the opinion of the court on A16, the court errors when it says SiteUpdate agreed that website database had to be distinct from the content. That's an error that is not harmless right there on website database in and of itself. The court was confused. It thought that website and content of the website were the same. They are in terms of these claims. But SiteUpdate was playing games and trying to distinguish it. Why? Because their infringement contentions, which are A1877, point out that they were accusing the website database of being the collection on the content of the website. So that's why they wouldn't give it up during the Markman process. I think we have your argument. We thank both counsel. The case is submitted. Thank you. We will now take a brief recess.